**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| CASSANDRA HARBOUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:23-cv-274-TLS-AZ |
| ) | |
| PARKER HANNIFIN ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Parker Hannifin Corporation's Motion for Leave to File Counterclaim. DE 18. This lawsuit began as an employment discrimination dispute. Plaintiff Cassandra Harbour alleges she was unlawfully fired from her job by Parker Hannifin after she engaged in protected activity. Parker Hannifin seeks to add allegations and counterclaims stemming from what it says were Harbour's defamatory communications with its customers using a false name and fake email address (designed to appear as if they were made on behalf of Parker Hannifin) after she was fired by the company. In essence, Parker Hannifin is accusing Harbour of retaliation because it fired her for what it maintains were legal and non-retaliatory reasons.

Harbour opposes leave to file the counterclaim on several grounds including that the claims are barred by the statute of limitations (*i.e.*, futility), fail to state claims as a matter of law, and that they are designed to retaliate against Harbour for filing this lawsuit, (*i.e.*, that they are being made in bad faith). As discussed below,

the Court will deny Parker Hannifin leave to file its proposed counterclaims because the claims would be futile and would result in an unnecessary delay in the resolution of Harbour's employment discrimination claims.

## Background

Plaintiff Cassandra Harbour began working as a Quality Assurance Manager at one of Defendant Parker Hannifin's plants in August 2020. DE 16, Am. Compl. ¶¶ 3,5. Six months into her job, an employee who reported directly to Harbour and who is of Puerto Rican-descent, complained to her about harassment and racial discrimination by a Plant Manager in a different department. *Id.* at ¶¶ 8–11. Harbour helped the employee report the alleged harassment and file a harassment complaint with human resources. She alleges that shortly after she helped report the racial discrimination and harassment, Parker Hannifin began to pretextually develop a case to terminate her employment. *Id.* at ¶¶ 12–19. And the month after she helped the other employee report harassment, Harbour's employment was terminated. *Id.* at ¶ 20.

Parker Hannifin denies liability as to the employment discrimination claims. However, it says that it learned of facts during discovery in this case which it says support numerous counterclaims against its former employee. Specifically, it says that it learned "that Harbour sent defamatory emails to Parker Hannifin customers alleging quality and other problems with Parker Hannifin's operations immediately after her termination. Harbour used a fake email

2

(parkerhannifinmerrilvilleusa@gmail.com) that appeared to come from Parker Hannifin, using the fake name 'Sarah Perez,' to send these emails." DE 18 at ¶ 1.

Parker Hannifin identifies and quotes from a single email as the basis for its proposed counterclaims. In that email, Harbour (posing as "Sarah Perez") told a customer that "your company's medical devices/sub components contractually produced at Parker Hannifin- Merrillville, IN USA are possibly compromised. In long-standing internal & external audits, numerous major nonconformance problems were (allegedly) uncovered"; and the email went on to list more than a dozen supposed issues. DE 18-1 at ¶ 9. Parker Hannifin says the statements in the email were "false and without any factual basis," *id.* at ¶ 10, but it does not explain why they are false. The customer then forwarded the email to a contact at Parker Hannifin who then forwarded it to at least one other person at the company. *Id.* at Ex. A. It is unclear what happened afterwards. Parker Hannifin does not allege any lost revenue, profits, business, customers, or other particularized commercial injuries as a result of Harbour's actions. Nor are the allegations concerning any investigation at the time.

Regardless, as a result of at least the one email, Parker Hannifin seeks to bring six separate counts against Harbor for violations of federal and Indiana state law: Count I for Violation of Section 43(a) of the Lanham Act; Count II for Tortious Interference with Business Relations; Count III for Defamation; Count IV for False Light; Count V for Counterfeiting; and Count VI for Identity Deception. DE 18-1 at ¶ 27–63.

3

**Discussion**

The Court applies a two-step analysis in evaluating a motion for leave to amend a pleading after the deadline to amend pleadings in the scheduling order has passed. First, the Court must determine whether the moving party has shown "good cause" under Federal Rule of Civil Procedure 16(b). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). If the good cause standard is met, the Court then applies the Rule 15(a)(2) standard for amendments. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) (stating that "[t]he two-step process is consistent with nearly every one of our sister circuits (and out of step with none)").

Federal Rule of Civil Procedure 15(a) provides that, when a party seeks leave to amend a pleading, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, if the underlying facts or circumstances relied upon by a party are potentially a proper subject of relief, the party should be afforded an opportunity to test the claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "By its plain terms, the rule reflects a liberal attitude towards the amendment of pleadings—a liberality consistent with and demanded by the preference for deciding cases on the merits." *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008).

The decision whether to grant or deny a motion to amend lies within the sound

4

discretion of the district court. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990). However, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman*, 371 U.S. at 183). With these principles in mind, the Court turns to applying the two-step analysis in this case.

### A. Whether Good Cause to Allow for Amendments After the Deadline Exists.

The deadline to seek leave to amend the pleadings was January 10, 2024. *See* DE 13. Parker Hannifin's motion was filed on April 4, 2024. DE 18. Parker Hannifin says there is good cause to allow a late amendment because it only learned the details of Harbour's allegedly tortious actions relatively close in time to when it filed its motion. Specifically, it was in January 2024, around when the deadline to file an amendment passed, when Harbour admitted in a discovery response to having created the "parkerhannifinmerrilvilleusa@gmail.com" email address at issue. *Id.* at ¶ 5.

In her response brief, Harbour does not seriously contest good cause under Rule 16(b), choosing to focus her arguments on Rule 15(a). Accordingly, the Court finds there would be good cause pursuant to Rule 16(b) to allow a potential amended pleading. But that is not the end of the inquiry.

5

### B. Whether Leave to Amend Should be Granted Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

While the Federal Rules of Civil Procedure embrace a liberal standard for allowing amended pleadings, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa*, 924 F.2d at 632 (citation omitted). Here, the Court's analysis focuses primarily on the futility and prejudice components of the analysis because those are what Harbour has principally argued.

As Parker Hannifin is seeking to assert counterclaims against the plaintiff who originally filed this lawsuit, the first task is to determine which type of counterclaim is being asserted: compulsory or permissive? This distinction matters because, "[p]ermissive counterclaims do not qualify under the 'conduct, transaction, or occurrence' test prescribed by Rule 15(c)(1)(B) for relation back" whereas compulsory ones do. *See* Wright & Miller *et al.*, 6 Fed. Prac. & Proc. Civ. § 1425 (3d ed.). "Rule 15(c)(1)(B) allows for a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading to relate back to—meaning to be deemed to have been filed on—the original pleading date. The rule's purpose is to forgive some pleading mistakes that otherwise would result in a claim being barred by a statute of limitations." *Carthan-Ragland v. Standard Bank & Tr. Co.*, 897 F. Supp. 2d 706, 711 (N.D. Ill. 2012). But a new or amended pleading "that 'attempts to

6

introduce a new legal theory based on facts different from those underlying the timely claims' will not relate back." *Louisiana Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp. 2d 79, 86 (D.D.C. 2006), *aff'd sub nom. Meijer, Inc. v. Biovail Corp.,* 533 F.3d 857 (D.C. Cir. 2008) (citation omitted).

In its motion, but without any legal support or analysis, Parker Hannifin labels its claims as "compulsory counterclaims." *See* DE 18 at ¶ 3. Despite raising numerous statute of limitations arguments, Harbour does not challenge this categorization in her response. Nevertheless, the Court cannot agree with Parker Hannifin's characterization of its claims as compulsory.

To determine whether a proposed counterclaim is compulsory or not, courts look to whether the basis for the counterclaim arises from the same "transaction or occurrence" as the underlying claims of the original lawsuit. Courts in the Seventh Circuit use a "'logical relationship' test construing the phrase 'transaction or occurrence' liberally to include a series of many logically related, if not temporally close, occurrences." *K & K Iron Works, Inc. v. Am. Railing Sys., Inc.*, No. 07 C 1832, 2008 WL 597607, at *3 (N.D. Ill. Feb. 28, 2008) (quoting *Warhawks & Co. v. Arcata Nat'l Corp.,* 552 F.2d 1257, 1261 (7th Cir. 1977)). In applying this test, courts must consider whether the "totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds" is sufficient to label the counterclaims compulsory. *Burlington Northern R.R. Co. v. Strong,* 907 F.2d 707, 711 (7th Cir. 1990) (discussing how test depends "not so much

7

upon the immediateness of their connection" in time) (citation omitted). "[A] counterclaim that has its roots in a separate transaction or occurrence is permissive" even if it arose at a similar point in time. *Id.*

Here, while the events underlying Harbour's lawsuit and Parker Hannifin's proposed counterclaim occurred close in time, there is a clear logical separation between the two. At the heart of Harbour's claims are her job performance and the events leading up to Parker Hannifin's decision to terminate her employment on March 3, 2021. She says it was for discriminatory and retaliatory reasons after she helped another employee report racism and harassment. Parker Hannifin maintains it was for other non-discriminatory reasons. Parker Hannifin's proposed counterclaims, by contrast, all concern events that transpired *after* it terminated Harbour's employment: they concern an email sent on March 4, 2021, the day after Harbour was fired. In essence, Parker Hannifin claims Harbour defamed and tried to harm the company because she was upset with being fired. But the lawfulness of Harbour's post-termination actions has nothing to do with whether Parker Hannifin's original decision to fire Harbour was lawful.

Other district courts have found that where an employee has sued his or her former employer for employment discrimination, claims brought by the employer against the former employee unrelated to the employment discrimination itself are not compulsory counterclaims. *Marcial v. Rush Univ. Med. Ctr.*, No. 16-cv-6109, 2018 WL 11476507 (N.D. Ill. May 9, 2018) is instructive. There, a former employee sued a

8

hospital for violations of federal employment laws, much like Harbour does here. During the course of discovery, the defendant-employer learned that the plaintiff had recorded at least one conversation without consent and brought claims for violation of the Illinois Eavesdropping Act. The court denied leave to file the counterclaim, ruling that "[a] counterclaim brought under the Illinois Eavesdropping Act and Plaintiff's claims for violations of various federal employment discrimination statutes and Illinois state law torts are very different in nature, require development of different factual backgrounds, and would require proof of distinct elements." *Marcial*, 2018 WL 11476507, at *2. The same is true here, where the claims on one side are for employment discrimination and the proposed counterclaims concern allegations of tortious conduct occurring *after* the plaintiff was fired and are unrelated to the employees' job performance or any alleged discrimination.

This stands in contract to cases where the merits of the proposed counterclaims relate to or encompass the fired-employee's job performance. *E.g.*, *Woolner v. Flair Commc'ns Agency, Inc.*, No. 01 C 6043, 2004 WL 161505, at *3 (N.D. Ill. Jan. 22, 2004) ("This Court thus finds that the breach of fiduciary counterclaim is logically related to the underlying discrimination claim and that evidence of the breach will be relevant to the disposition of this case.") (allowing leave to file counterclaims in employment discrimination lawsuit where proposed counterclaims were for breach of fiduciary duty and factually related to the time plaintiff/counterclaim-defendant was employed). The case at bar is also distinguishable from *Marion T, LLC v. Formall,*

9

*Inc.*, No. 1:12-cv-456, 2014 WL 6605588 (N.D. Ind. Nov. 20, 2014), relied upon by Parker Hannifin. In *Marion T*, the plaintiff sued for conversion of certain manufacturing equipment and the defendant later sought leave to file a counterclaim alleging conversion by the plaintiff of that same equipment. The court thus allowed the counterclaim in large part because "the counterclaim concerns the very same property that [the parties] already litigated" and "much of the evidence concerning the disputed property is already established regardless of the counterclaim." *Marion T*, 2014 WL 6605588, at *3. Because the proposed counterclaims in *Marion T* concerned the same property as the original lawsuit, the counterclaims arose "out of the [same] transaction or occurrence set out in [the plaintiff's] original pleading." *Id.* at *4.

Furthermore, judicial economy would not be served by having these claims presented in a single trial. If anything, trying these two distinct sets of claims together would needlessly complicate any potential trial by tying two wholly different factual scenarios and legal theories together. Whether Parker Hannifin's decision to fire Harbour was based on discriminatory and unlawful reasons has no bearing on whether Harbour sent the email(s) in question or whether they were defamatory. In other words, "[j]udicial economy would not be well served in this case as these two actions are based on separate transactions and 'lack any shared realm of genuine dispute.'" *Gilldorn Sav. Ass'n v. Com. Sav. Ass'n*, 804 F.2d 390, 397 (7th Cir. 1986) (citation omitted).

10

Thus, when Parker Hannifin contends that the statute of limitations is inapplicable because it says its proposed counterclaims are compulsory counterclaims and "relate back" to Harbour's original lawsuit, it misses the mark. *See* DE 20 at 3 ("Parker Hannifin's counterclaims arise out of the same transaction or occurrence as Parker's claims: her termination"). Because these are permissive rather than compulsory counterclaims, "relation back" under Rule 15(c)(1)(B) is not allowed.

That brings us to Harbour's contention that many of Parker Hannifin's claims are barred by the statute of limitations, and thus that it would be futile to allow Parker Hannifin to assert those claims. *See Buy Direct, LLC v. DirectBuy, Inc.*, No. 2:15-CV-344-JPK, 2023 WL 142704, at *6 (N.D. Ind. Jan. 10, 2023) (explaining how "[a]n amendment is futile when the proposed amendment [would be barred by the] statute of limitations affirmative defense"). Specifically, while Parker Hannifin's proposed counterclaim references "emails" in the plural, only one allegedly defamatory communication is identified: a March 4, 2021 email. Parker Hannifin filed its motion for leave to file counterclaims on April 4, 2024, or three years and one month after the allegedly defamatory email was made.

All of Parker Hannifin's proposed state law claims are subject to a two-year statute of limitations. *See* Ind. Code. § 34-11-2-4(a) ("An action for: (1) injury to person or character; (2) injury to personal property; or (3) a forfeiture of penalty given by statute; must be commenced within two (2) years after the cause of action accrues."). Defamation, false light, and tortious interference are all injuries to character or

11

property. And while identity deception and counterfeiting are crimes, the Indiana Crime Victim Recovery Act allows for civil claims by persons injured by certain criminal conduct, and thus those claims fall under the rubric of "penalty given by statute." Ind. Code. § 34-11-2-4(a). These claims needed to be filed by March 4, 2023, two years after Parker Hannifin was made aware of the allegedly defamatory email in order to be timely, unless some other legal doctrine prevented the statute of limitations from running. *See Burks v. Rushmore*, 534 N.E.2d 1101, 1104 (Ind. 1989) ("[T] the statute of limitations begins to run upon ascertainability of actionable damage").

Parker Hannifin argues that principles of estoppel apply to bar or toll the statute of limitations because Harbour "took active steps to prevent" it from suing her. DE 20 at 3. Its argument boils down to the fact that Harbour did not disclose that she sent the emails to the Equal Employment Opportunity Commission when she first sought the right to sue. *Id.* at 3–4. Parker Hannifin does not cite any legal authority to support its position that Harbour's failure to disclose information unrelated to her termination to the EEOC was somehow an "active step" on her part to prevent Parker Hannifin from learning more about an email it knew about months before, when it was forwarded to the company by the customer who had received it and then circulated to at least one other Parker Hannifin employee. Nor is the email relevant to why Harbour was fired since it was sent after that occurred.

Parker Hannifin's remaining argument is that "the doctrine of continuing

12

wrong tolls the statute of limitations until the end of the wrongful act" and that it should be allowed to pursue this claim so that it can determine if Harbour engaged in any continuing wrong after March 4, 2021. DE 20 at 4. Again, Parker Hannifin misapprehends the legal doctrine in question. "[T]he doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *C & E Corp. v. Ramco Indus., Inc.,* 717 N.E.2d 642, 645 (Ind. Ct. App. 1999) (citation omitted). Here, Parker Hannifin does not dispute that its employees received the allegedly defamatory email on March 4, 2021. But it seems at the time the company thought nothing of it and did not seek to uncover the identity of who sent the email at the time it was sent, at least from what is alleged in the proposed counterclaims. That inaction by Parker Hannifin does not support preventing the statute of limitations from otherwise running. Nor has Parker Hannifin alleged in its counterclaim any continuing relationship between it and Harbour that would support a "continuing wrong" theory. From what the Court can gather, their relationship ended once Parker Hannifin fired Harbour, which again, was prior to the email at issue being sent. Thus, any claims with a two-year statute of limitations would be barred and futile.

That leaves one remaining claim, for violation of Section 43(a) of the federal Lanham Act for unfair competition. Harbour does not repeat her statute of limitations argument as to the Lanham Act claim, presumably because "[t]he Lanham Act does

13

not contain a statute of limitations," *Best Chair Inc. v. Factory Direct Wholesale, LLC*, 121 F. Supp. 3d 828, 841 (S.D. Ind. 2015). But there are other reasons why allowing Parker Hannifin's Lanham Act claim to proceed would be futile.

For many years, the law in the Seventh Circuit was that to have standing to bring a false advertising or unfair competition claim, a plaintiff and defendant needed to be direct competitors. *See L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993). The Supreme Court, however, has abrogated any such "bright-line rule" requiring direct-competition. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014) ("[T]he direct-competitor test provides a bright-line rule; but it does so at the expense of distorting the statutory language. To be sure, a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation. But a rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to 'unfair competition' in § 1127."). But the proximate cause element remains, and a would-be Lanham Act plaintiff (or counterclaimant) must still show a *competitive injury* in order to have a potentially viable claim—which in most instances requires the relevant parties to be competitors or at least operate in the same market of goods and services. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers."); *see also Gaby's Bags, LLC v.*

14

*Mercari, Inc.,* No. C 20-00734 WHA, 2020 WL 5944431, at *2 (N.D. Cal. Oct. 7, 2020) ("Unlike plaintiff that is a seller of goods, [defendant] is consumer-to-consumer platform that does not itself sell any goods . . . plaintiff's injuries arose from its relationship with Mercari as a consumer . . . and not as a competitor.") (dismissing Lanham Act claim for lack of standing for failure to show proximate cause and competitive injury).

A Section 43(a) claim arises where a person "has made a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion as to the origin of his or her goods.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003) (cleaned up). Critically missing from Parker Hannifin's proposed counterclaim is any allegation that Harbour was selling or offering any goods or services when she made the allegedly false statements regarding Parker Hannifin's products. According to Parker Hannifin, Harbour was a disgruntled former employee who said something false, not in connection with selling any goods or services of her own, but apparently out of spite and retaliation for being fired. But the Lanham Act's prohibition on unfair competition does not extend to cover every possible instance where a business does not like something false that someone says about it.

Nor are there allegations of any competitive injury to Parker Hannifin from the email it identifies in its proposed counterclaim. This lack of injury not only undermines the statutory claim under the Lanham Act, it also calls into question

15

Parker Hannifin's Article III standing to bring any claim in this instance for lack of any injury-in-fact. *See MillerKing, LLC v. DoNotPay, Inc.*, 702 F. Supp. 3d 762, 772 (S.D. Ill. 2023) (dismissing Lanham Act claims brought by law firm against an "AI-based legal subscription service" for lack of concrete injury and Article III standing); *see also Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 880 (7th Cir. 2020) ("Experian's counterclaim points to no definite reasons to believe Crabtree's lawsuit tarnished the company's goodwill, affected its future business prospects, or lessened its position as one of the nation's major consumer reporting agencies."). "It is not enough to say that your reputation was harmed without explaining how." *Id.*

Parker Hannifin's reliance on *Landmark Signs, Inc. v. ICU Outdoor Advert., LLC*, No. 2:16-CV-128 RLM, 2017 WL 1178759, at *2 (N.D. Ind. Mar. 30, 2017) is thus misplaced because in that case, unlike here, the parties were direct competitors in the sign and physical advertising space. Again, "[t]he Lanham Act was designed to prevent unfair *competition*," *id.* (emphasis added), not to give every business a claim against anyone or anything that ever says something false or misleading about it. In other words, it is designed to allow claims where there is "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.*

There is no reason to think Congress wrote the Lanham Act to allow a company to sue an errant former employee who sends a disparaging and false email out of spite or retaliation for being fired. "To establish proximate cause under section 1125(a), a

16

plaintiff 'ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff.'" *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 946 (S.D. Cal. 2016) (quoting *Lexmark*, 572 U.S. at 133). There is no allegation that any trade was withheld as a result of the email Harbour sent and thus Parker Hannifin cannot avail itself to recover under the Lanham Act in this instance. *See Lexmark*, 572 U.S. at 134 ("While a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties who suffer merely as a result of the competitor's inability to meet its financial obligations.") (cleaned up).

Finally, there is the issue of prejudice to Harbour. Discovery on Harbour's employment discrimination claims has closed (and had nearly closed when Parker Hannifin filed its motion). This case will soon proceed to summary judgment and/or trial if it does not settle before then. Allowing Parker Hannifin leave to file counterclaims relating to the alleged defamation and other claims would necessarily require re-opening discovery on entirely new factual issues and legal theories unrelated to the original lawsuit. Any such additional discovery would take time, at least several months according to the parties, *see* DE 19 at 7–8 and DE 20 at 2, n.1, and that will delay resolution of Harbour's original claims against her former employer which accrued in 2021 and were filed in 2023. Such a delay in resolving the

17

original claims constitutes prejudice in these circumstances. *See, e.g.*, *Karum Holdings LLC v. Lowe's Companies, Inc.*, No. 15 C 380, 2017 WL 5593319, at *4 (N.D. Ill. Nov. 21, 2017) ("The Court finds that allowing Lowe's to add a new counterclaim at this late date would be highly prejudicial to Karum."); *In re Ameritech Corp.*, 188 F.R.D. 280, 284–85 (N.D. Ill. 1999) (denying leave to add a permissive counterclaim where it would introduce new issues into the lawsuit and require reopening discovery). This presents another reason, beyond futility, for denying Parker Hannifin's motion.

## Conclusion

Accordingly, and for reasons discussed herein, Defendant Parker Hannifin Corporation's Motion for Leave to File Counterclaim [DE 18] is **DENIED**.

SO ORDERED this 10th day of September 2024.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT